Fahim BATLA, Plaintiff and Appellant,

v.

NORTH DAKOTA STATE UNIVERSITY, a public corporation, Defendant and Appellee.

Civ. No. 10855.

Supreme Court of North Dakota.

June 27, 1985.

Daniel J. Chapman [argued], of Chapman & Chapman, Bismarck, for plaintiff and appellant.

Rick D. Johnson, Asst. Atty. Gen., State Bd. of Higher Educ., State Capitol, Bismarck, for defendant and appellee, appearance.

Richard B. Crockett [argued], Sp. Asst. Atty. Gen., North Dakota State University, Fargo, for defendant and appellee.

GIERKE, Justice.

This is an appeal from the granting of summary judgment in favor of defendant-appellee, North Dakota State University [NDSU]. We affirm.

Fahim Batla [Batla] was hired by NDSU as a non-tenured associate professor of en-

gineering for the 1979–1980 year. Batla contends that at the time of his initial hiring he was promised two years' credit toward tenure. Thereafter, his employment was renewed for the following years: 1980–1981, 1981–1982, and 1982–1983. According to the regulations of the State Board of Higher Education [the Board] on Academic Freedom, Tenure, and Due Process in effect in 1979, a person could be granted tenure after six years of probationary service. However, a notice of nonrenewal dated May 31, 1983, was received by Batla on June 1, 1983. The notice informed Batla that his contract would not be renewed beyond the end of the 1983–1984 fiscal year. According to the Board's regulations in effect in 1983, Batla was to receive notice of nonrenewal at least twelve months before expiration of his appointment. The period of appointment is not precisely defined in the regulations. Batla asked for a statement of the grounds for the nonrenewal decision. He also requested the Special Review Committee to determine whether or not he had received adequate consideration by the reviewing authorities. On October 20, 1983, Batla was notified by the Special Review Committee that his charge of inadequate consideration was not justified. Batla's employment status with NDSU was terminated on June 30, 1984.

Batla then instituted an action for declaratory judgment against NDSU, requesting the court to determine his status at NDSU insofar as tenure and nonrenewal of his probationary contract were concerned. Batla then made a motion for summary judgment, asserting that the only question for determination in the case was whether or not Batla had received the requisite twelve-months' notice pursuant to the Board's regulations. NDSU responded to Batla's motion by submitting affidavits containing pertinent facts on the issue of the twelve-months' notice. NDSU then presented a cross-motion for summary judgment in its favor. The trial court granted summary judgment in favor of NDSU and issued a memorandum opinion. Batla applied to this court for the exercise of its superintending power over the trial court. The writ was denied and this appeal followed.

■ The issue for this court is the propriety of the trial court's granting of summary judgment in favor of NDSU. Summary judgment is appropriate when there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Rule 56, North Dakota Rules of Civil Procedure; *Hartlieb v. Sawyer Township Board*, 366 N.W.2d 486 (N.D.1985). The trial court ruled as a matter of law that Batla received the requisite notice twelve months before the expiration of his appointment.

In the instant case, we conclude that it was appropriate as a matter of law to enter summary judgment against Batla on the notice issue. The undisputed facts on this legal issue are as follows.

The regulations provide for notice of nonrenewal to be given twelve months prior to the termination of an appointment. Batla's contract forms for the 1979–1980, 1981–1982, and 1982–1983 years refer to his appointment for the *fiscal* year; however, his 1980–1981 contract refers to the *academic* year. Batla received a notice on June 1, 1983, stating that his contract would not be renewed beyond the end of the 1983–1984 fiscal year. Batla's employment status was terminated on June 30, 1984. He received a paycheck for the month of June 1984. His group health insurance premium for June was paid by NDSU. The faculty at NDSU have responsibilities for grading student work, conducting research, and attending meetings beyond the month of May. Batla concedes that the above-stated facts cannot be refuted. However, he argues that the facts provide a basis upon which an inference can be drawn as to the notice issue. We disagree. Under the circumstances of this case, the issue of whether Batla received the requisite twelve months' notice is one properly determined as a matter of law. Therefore, the trial court properly granted summary judgment in favor of NDSU on the issue of notice.

Batla asserts that, even if the notice issue was not decided in his favor, he had reserved his right to litigate these three remaining issues:

1. Whether he should have received two years' credit toward tenure,
2. Whether he was afforded a hearing where his reasons for nonrenewal have been objectively considered, and
3. Whether the Special Review Committee failed to determine whether Batla had received adequate consideration.

NDSU argues that Batla has waived his right to pursue these three remaining issues because Batla stated in his brief that the only issue for determination was the notice issue. Although Batla did make that statement in his brief, he later clarified his position stating at the hearing on the summary judgment motions that he reserved his right to have these issues determined at trial. In cases where cross-motions for summary judgment are presented, it is proper for a party to assert that there are no genuine issues of material fact for purposes of that party's motion only. *Biby v. Union National Bank of Minot*, 162 N.W.2d 370, 373 (N.D.1968). Therefore, we conclude that Batla did not waive his right to pursue his three remaining contentions. Nevertheless, Batla's three remaining contentions do not give rise to a reversal of the trial court's decision in favor of NDSU. The trial court was correct in concluding that no issues of fact remain in the instant case.

The trial court's conclusion that there are no remaining issues of fact is one of law. Conclusions of law are fully reviewable on appeal. *Norden Laboratories, Inc. v. Rotenberger*, 358 N.W.2d 518, 521 (N.D.1984); *Intern. Feed Products v. Alfalfa Products*, 337 N.W.2d 154, 156 (N.D. 1983); *Schwarting v. Schwarting*, 310 N.W.2d 738, 740 (N.D.1981).

Batla asserts that NDSU failed to give him two years of credit toward tenure which was promised to him at the time of hiring. Section B(1)(b)(i) of the Board's regulations allows for the granting of such credit toward tenure. However, even if Batla had been extended two additional years of credit toward tenure, the outcome of this appeal would remain the same.

Section C(1)(c) of the Board's Regulations on Academic Freedom, Tenure, and Due Process provides:

"*C. Nonrenewal of Appointment of Probationary Faculty*

"1. In all cases, written notice that a probationary appointment is not to be renewed shall be given to the faculty member in advance of the expiration of his or her appointment, as follows:

.    .    .    .    .

"c. At least twelve months before the expiration of an appointment after two or more academic years of service at the institution."

Under the above regulation, a faculty member who has served two years or more is entitled to twelve-months' notice of nonrenewal. Procedurally, Batla was properly notified of nonrenewal twelve months before the expiration of his appointment. The end of the 1982–1983 year marked the completion of Batla's fourth year of service, or sixth year of service if we count the two years of credit allegedly given. Under § B(1)(a) of the regulations, a faculty member may spend no more than six years on probation. Section (B)(1)(b) states, in pertinent part:

"b. Tenured Appointments recognize a right, subject to the conditions in these regulations, to continuous academic year employment in an academic unit or program area as defined by an institution and stated on the contract. *A faculty member shall qualify for a tenured appointment by satisfying the criteria for tenure (developed in accordance with Section A(3)(b) of this policy) during a probationary period of six years of academic service to the institution.* Upon recommendation by the president, the Board may award early tenure." (Emphasis added.)

Further, § B(1)(c) specifies that certain appointments do not involve either tenure or

status. Subsection (vi) of § B(1)(c) states that such appointments include:

"(vi) Terminal appointments given with notice of nonrenewal to faculty members who were previously on probationary appointment. A terminal appointment with notice of nonrenewal must be given to a faculty member no later than the end of the sixth year of probationary appointment *if the decision is made to deny tenure.*" (Emphasis added.)

Thus, two years of credit toward tenure would have only made Batla *eligible* for tenure consideration at the end of his 1982–1983 year of service according to the Board's regulations. Batla received notice of nonrenewal at the end of his fourth year of service (or sixth year, as calculated above), in compliance with all of the above regulations. Therefore, it is irrelevant whether Batla received two years of credit toward tenure.

▆▆▆ Batla's two remaining contentions concern the adequacy of the termination procedures. Batla contends that he has never had "the opportunity to meet his accusers face to face and cross-examine them in any proceeding held for the pur-

pose of determining the sufficiency of the reasons given for the nonrenewal". Batla's response to the nonrenewal notice included several requests.[1] In his response, Batla did not specifically request a hearing. The Board's regulations do provide for a formal hearing, but only upon request from the faculty member within 15 days after receipt of the Special Review Committee's report.[2] The Committee reported to Batla by letter dated October 20, 1983, that his charge of inadequate consideration was not justified. Batla did not request a formal hearing within 15 days of the Committee's report.

NDSU argued to the court below that it had substantially complied with the termination requirements. According to this court's opinion in *Stensrud v. Mayville State College*, 368 N.W.2d 519 (N.D.1985), a determination of substantial compliance is a question of fact. Generally, summary judgment is inappropriate in cases where a determination requires factual findings. However, in the instant case, the record shows that NDSU precisely followed the procedural mandates contained in the Board's regulations pertaining to nonre-

---

1. Batla's letter dated June 6, 1983, addressed to Dr. L.D. Loftsgard, President, NDSU, reads in pertinent part:

"... I hereby request the following information at your earliest convenience.

"1. A statement of the grounds of your decision not to renew my faculty appointment beyond the end of 1983–84 fiscal year stated with reasonable particularity, clarity, and accuracy in terms of specific events, dates; names, etc., and copies of *all* documents which support your statement.

"2. A statement confirming that your decision is based on a thorough and impartial investigation of the following, including the copies of *all* documents related to this investigation;

"(a) my professional experience and qualifications, and my job-related activities and responsibilities at North Dakota State University since 1979.

"(b) my faculty rights guaranteed by the policies of the Department of Civil Engineering, the College of Engineering and Architecture, the North Dakota State University, and the North Dakota Board of Higher Education;

"(c) my rights guaranteed by the United States Constitution;

"(d) the recommendations of the nonrenewal of my employment by the Chairman of the Civil Engineering Department, the Promotion, Evaluation and Tenure Committee of the College of Engineering and Architecture and the Dean of College of Engineering and Architecture are not based on inadequate considerations, undue influence, personal bias and/or discriminatory opinions and practices;

"(e) the statements, and the allegations implied in these statements, by the Chairman of the Civil Engineering Department in support of his recommendation of the nonrenewal of my employment are not the result of an intentional and preplanned entrapment, has been proven correct and factual beyond doubt, and that these allegations provide the grounds for the termination of my faculty appointment at North Dakota State University;

"(f) the terms and conditions of my original appointment as a faculty member in the Department of Civil Engineering at North Dakota State University."

2. State Board of Higher Education Regulations on Academic Freedom, Tenure, and Due Process, approved March 1983, § I(6).

newal of a probationary faculty member.[3] It is undisputed that the termination process began with recommendations of nonrenewal by the tenured faculty of the Department of Civil Engineering, dated April 18, 1983; by the Department Chairman, dated April 18, 1983; by the Promotion, Evaluation, and Tenure Committee, dated May 20, 1983; and by the Dean of the College of Engineering, dated May 20, 1983. The President of NDSU then sent Batla a formal written notice of nonrenewal, dated May 31, 1983. It is uncontested that Batla requested and received (1) a statement of the grounds for nonrenewal, and (2) consideration by a Special Review Committee of his charge that the nonrenewal decision was based on inadequate consideration. The Special Review Committee in reviewing a charge of "inadequate consideration" evaluates the charge in light of the relevant standards of the institution. This court was not provided with access to the "relevant standards of the institution". Even if we were able to examine the standards, it is not our function to do so. Our function is to review the trial court's conclusion that no issues of fact remain with respect to Batla's charge of inadequate consideration. *Hartlieb v. Sawyer Township Board,* 366 N.W.2d 486 (N.D.1985); *Intern. Feed Products v. Alfalfa Products,* 337 N.W.2d 154, 156 (N.D.1983). In doing so, we pay close attention to the regulations of the Board. According to § C(3) of the Board's regulations, the term "inadequate consideration" refers to *procedural* rather than substantive issues. Section C(3) also states that, in reviewing a charge of inadequate consideration, the Special Review Committee should not substitute its own judgment on the merits of whether a faculty member should be reappointed or given tenure.

We conclude that Batla's final contentions concerning the adequacy of the termination procedures do not present any issues of material fact to be resolved. Therefore, the trial court was correct in concluding as a matter of law that the procedures followed by NDSU were proper and that no issues of fact exist.

Affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

3. State Board of Higher Education Regulations, on Academic Freedom, Tenure, and Due Process, approved March 1983, §§ C(1)(c), C(2), C(3), and C(4).