Helen **BIESTERFELD and Viola Langseth, personal representatives of the Estate of Raymond E. Baron, deceased, Plaintiffs and Appellants,**

v.

**ASBESTOS CORPORATION OF AMERICA; Asbestos Corporation, Ltd., a foreign corporation; Carey Canada, Inc., a foreign corporation; The Celotex Corporation, a Delaware corporation; Combustion Engineering, Inc., a Delaware corporation; Keene Corporation, a New Jersey corporation; MacArthur Company, a Minnesota corporation, Defendants,**

**Asbestospray Corporation, a New York corporation; Certain–Teed Products Corporation, a Maryland corporation; Crane–Johnson Lumber, a North Dakota corporation; GAF Corporation, a Delaware corporation; H & A Construction Corporation, a New York corporation; Victor H. Leeby Co., a North Dakota corporation; National Gypsum Company, a Delaware corporation; Proko Industries, a Texas corporation; Spraycraft Corporation; Union Carbide, a New York corporation; U.S. Gypsum, a Delaware corporation; W.R. Grace Company, a New Jersey corporation, Defendants and Appellees.**

**Civ. No. 900321.**

Supreme Court of North Dakota.

April 2, 1991.

Daniel Plambeck of Stefanson, Landberg & Plambeck, Moorhead, for defendant and appellee Victor H. Leeby Co. Joined in brief of Maureen Holman.

Daniel L. Hovland of Fleck, Mather & Strutz, Ltd., Bismarck, for defendant and appellee W.R. Grace Co. Submitted brief and adopted legal arguments in brief of Maureen Holman.

David C. Thompson (argued) of Craft, Thompson & Boechler, P.C., Fargo, for plaintiffs and appellants.

Maureen Holman (argued on behalf of all appellees) of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, and Foley & Lardner, Milwaukee, Wisc., for defendants and appellees Certain–Teed Products Corp., GAF Corp., Nat. Gypsum Co., Union Carbide, and U.S. Gypsum.

Sheryl Ramstad Hvass and Louise Dovre of Rider–Bennett, Minneapolis, Minn., for defendant and appellee Proko Industries. Joined in brief of Maureen Holman.

Garylle B. Stewart of Solberg, Stewart, Boulger, Miller & Johnson, Fargo, for defendant and appellee Crane Johnson Lumber. Joined in brief of Maureen Holman.

Susan Hansen of Stich, Angell, Kreidler & Muth, P.A., Minneapolis, Minn., and Richie & Associates, Fargo, for defendants and appellees Asbestospray Corp., Spraycraft Corp., and H & A Const. Corp. Submitted brief and joined in brief of Maureen Holman.

ERICKSTAD, Chief Justice.

Helen Biesterfeld and Viola Langseth, as personal representatives of the estate of

Raymond E. Baron, appeal from a judgment dated August 3, 1990, issued by the District Court for the East Central Judicial District. Plaintiffs assert that the district court erred in granting the defendants'[1] motions for summary judgment on the basis that the time permitted under the statute of limitations for the action had expired. We reverse and remand for jury trial.

In September of 1987, Baron commenced this action against the defendant manufacturers, miners, processors, importers, converters, and/or retailers of asbestos products. The action was based upon the alternate theories of negligence, strict liability, breach of warranty, and fraudulent concealment. On March 24, 1988, a stipulation was entered into releasing Combustion Engineering, Inc. On March 14, 1989, a judgment was entered dismissing the Asbestos Corporation of America for lack of personal jurisdiction, and a stipulation was entered into releasing the MacArthur Company. On August 22, 1989, Asbestospray Corporation, Spraycraft Corporation, H & A Construction, Proko Industries, Inc., Celotex Corporation, Carey–Canada, Inc., W.R. Grace & Co., Asbestos Corporation, Ltd., Victor H. Leeby Co., and Crane Johnson Co., Inc., were dismissed from the action following their motions for summary judgment based upon the expiration of the statute of limitations.

Baron died on November 5, 1989. On December 8, 1989, a document titled "Suggestion on Record of Party's Death" was filed in the district court. On March 9, 1990, a motion for substitution of representatives as plaintiffs, accompanied by an affidavit, was filed in the district court. The record on appeal does not disclose that the district court took any action on the motion but the parties have apparently recognized the need to substitute the personal representatives for the decedent, Raymond E. Baron. In light of that apparent agreement, we approve the substitution but shall, for the sake of simplicity, refer to the plaintiffs as Baron.

On August 3, 1990, a second judgment was entered which dismissed Proko Industries, Inc., Celotex Corporation, Carey–Canada, Inc., Certain–Teed Corporation, GAF Corporation, Keene Corporation, National Gypsum Corporation, Union Carbide, and U.S. Gypsum on the basis of the expiration of the statute of limitations. The August 3, 1990, judgment refers to both the order for the initial dismissals which occurred in August of 1989, and the second order which includes the second set of dismissals. The August 3, 1990, judgment specifically lists six of the ten defendants listed in the August 22, 1989, judgment for dismissal, and makes reference to the stipulations which dismissed Combustion Engineering and the MacArthur Company. On August 31, 1990, a notice of appeal was filed by Baron from the August 3, 1990, judgment. On September 6, 1990, a notice of entry of judgment was filed concerning the August 22, 1989, judgment. The service of the notice of the entry of that judgment was made upon Baron on September 6, 1990.

1. The following entities were named as defendants in the initial action:

Asbestos Corporation of America;
Asbestos Corporation, Ltd., a foreign corporation;
Asbestospray Corporation, a New York corporation;
Carey Canada, Inc., a foreign corporation;
The Celotex Corporation, a Delaware corporation;
Certain–Teed Products Corporation, a Maryland corporation;
Combustion Engineering, Inc., a Delaware corporation;
Crane–Johnson Lumber, a North Dakota corporation;
GAF Corporation, a Delaware corporation;
H & A Construction Corporation, a New York corporation;
Keene Corporation, a New Jersey corporation;
Victor Leeby, a North Dakota corporation;
MacArthur Company, a Minnesota corporation;
National Gypsum Company, a Delaware corporation;
Proko Industries, a Texas corporation;
Spraycraft Corporation;
Union Carbide, a New York corporation;
U.S. Gypsum, a Delaware corporation;
W.R. Grace Company, a New Jersey corporation.
Hereinafter, these entities will be addressed collectively as the "defendants".

Baron was exposed to asbestos from 1938 to 1984, during his work as a plasterer and spray texturer. In 1970, he began to have difficulty with his breathing. During the mid 1970's, he became aware of the potential dangers associated with asbestos, and by the late 1970's, he began to wear a facial mask on at least a partial basis while working with asbestos products.

In 1982, Baron attended a meeting concerning asbestos problems at the law office of Shelly Lashkowitz. Sometime after this meeting, chest x-rays of Baron were sent to Dr. Irving J. Selikoff at the Mt. Sinai Medical Center in New York. After examining the x-rays, Dr. Selikoff sent a letter to Shelly Lashkowitz dated April 16, 1982, which said that the x-rays revealed that the "appearances are consistent with asbestosis." Baron received a copy of Dr. Selikoff's letter sometime during mid–1982.

On July 16, 1982, Baron initiated a claim with the North Dakota Worker's Compensation Bureau. In response to a number of questions on the worker's compensation claim form, Baron answered as follows: he was injured while working with the application of asbestos containing products, the parts of the body which were injured were the lungs, the nature of the injury was asbestosis, and that his first treating physician was Dr. Selikoff.

In February of 1983, Shelly Lashkowitz instructed Baron to travel to the Morgan Clinic in Bismarck, North Dakota, in order to have a pulmonary function test performed. The tests were performed by Dr. J. Greene who concluded that Baron suffered from "a severe obstructive lung disease." Dr. Greene did not indicate whether or not Baron's lung problems were asbestos related. The Pulmonary Function Report provided by Dr. Greene reveals that Dr. Greene believed Baron was uncooperative and that Baron had attempted to "falsify test results."

While the record is not completely clear, it does suggest that sometime during 1982 or 1983 Baron was encouraged by Dr. Hugh Thorfinnson to have diagnostic tests performed, and that Dr. Thorfinnson told Baron that his problems appeared to be asbestos related. This was all in connection with Baron's painting of the doctor's home. Dr. Thorfinnson did not personally examine Baron at this time.

By 1984, Baron's breathing problems had intensified. In August of 1984, Baron collapsed and passed out while at work. A similar event occurred approximately one month later and Baron was subsequently hospitalized from September 9 through September 12 of 1984 at St. Luke's Hospital in Fargo, North Dakota. During this hospitalization, Baron was treated by Dr. Barrie L. March. Dr. March discharged Baron on September 12, 1984, with the following diagnosis: "Chronic obstructive airways disease, severe. *Pleural changes consistent with asbestosis.* Essential hypertension. Probable alcoholism. [Emphasis added.]"

Baron was hospitalized again at St. Luke's in early October 1984. On October 11, 1984, Dr. March reported that Baron's past medical history was, in part, as follows: "He has a history of asbestos exposure and has known pleural plaques *but no evidence of pulmonary asbestosis.* [Emphasis added.]"

Baron's discharge record from St. Luke's, dated November 2, 1984, contains this statement of medical history: "*asbestos exposure with positive plaques on the diaphragms.* [Emphasis added.]" However, in the same medical record under the heading of "DISCHARGE MEDICATIONS" the following appears:

"He did have pulmonary function tests done which showed severe chronic obstructive pulmonary disease but no restrictive disease that could be attributable to his asbestos [sic]. *His asbestos [sic] is most likely asymptomatic an [sic] is strictly and [sic] exposure without any clinical significance.* [Emphasis added.]"

These medical notes were apparently made by Dr. D. Martindale, but were

signed by Dr. Patrick Stoy.[2] Dr. Stoy continued to treat Baron until June 3, 1986.

On December 28, 1984, Baron's worker's compensation claim was dismissed. While the actual dismissal provides very little information, it does contain a finding of fact that "[t]here is no evidence the claimant sustained an injury or contracted a disease as a result of exposure to asbestosis [sic]"; and the following conclusions: "The claimant failed to prove he sustained a compensable injury"; and "The claimant failed to prove he is entitled to any benefits under the North Dakota Workmen's Compensation Act."

In March of 1987, Baron was examined by Dr. Thorfinnson. On March 24, 1987, in a letter addressed to the North Dakota Workmen's Compensation Bureau, Dr. Thorfinnson said that Baron had an unquestionable history of asbestosis; that Baron had "bilateral pleural calcifications which are virtually pathognomonic of asbestosis;" and that he was convinced Baron suffered from asbestosis. In a report dated April 21, 1988, Dr. Donald J. Matthees of the Dakota Clinic in Fargo, North Dakota, said: "While this gentleman has benign pleural plaques that are undoubtedly due to asbestos exposure, he has no evidence for pulmonary asbestosis."

As previously indicated herein, on August 3, 1989, and August 2, 1990, the district court granted two separate motions for summary judgment in favor of the defendants. The motions were granted on the basis that the statute of limitations which governs this action had expired. On appeal Baron asserts: 1) material issues of fact exist which preclude summary judgment; 2) the defendants' defense arising from the statute of limitations is barred because the defendants have raised other defenses which are inconsistent with the statute of limitations defense; 3) the three-

year statute of limitations provided for in section 28–01.1–02(4) of the North Dakota Century Code violates the Equal Protection Clause of the North Dakota Constitution; and, 4) the statute of limitations did not begin to run as a result of the tolling statute contained in section 28–01–32 of the North Dakota Century Code. Several of the defendants claim that Baron has failed to properly bring them before this Court and, therefore, ask to be dismissed from this appeal.

## I. NOTICE OF APPEAL

Asbestospray Corporation, Spraycraft Corporation, and H & A Construction Corporation seek to be dismissed from this appeal on ground that they are "not subject to the jurisdiction of the appellate court." These three defendants were all named in the August 22, 1989, judgment for dismissal. Notice of the entry of the August 22, 1989, judgment was served on Baron by mail on September 6, 1990. These three defendants were not individually named in the title or the body of the August 3, 1990, judgment. These defendants claim that because Baron's notice of appeal states that he is appealing the 1990 judgment, and does not mention the 1989 judgment, they are not properly included in this appeal.[3]

We disagree. The pertinent part of the August 3, 1990, judgment of dismissal reads as follows:

"This matter came on for hearing before the court, The Honorable Lawrence A. Leclerc presiding, on August 3, 1989, and on July 30, 1990, upon defendants motions for summary judgment. By *orders dated August 22, 1989 and August 2, 1990,* Judge Leclerc ordered that defendants ... be dismissed with prejudice from the above caption [sic] action, and

---

**2.** The discharge record dated November 2, 1984, bears the typed name of D. Martindale, underneath which is the signature of P. Stoy.

**3.** On September 6, 1990, Baron was served with the notice of entry of the August 22, 1989, judgment. The pertinent part of Rule 4(a), N.D.R. App.P., provides:

"In a civil case the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 60 days of the date of the service of notice of entry of the judgment or order appealed from."

The defendants assert that Baron has failed to appeal from the 1989 judgment within that time frame.

ordered that judgment be entered in favor of the above named defendants." [Emphasis added.]

The pertinent part of Baron's notice of appeal of August 30, 1990, reads:

"The above-named plaintiff, by and through his undersigned counsel, hereby appeals from the Judgment of Dismissal entered by the District Court in the above-captioned case on August 3, 1990. *The specific subject matter of the instant appeal derives from the District Court's orders of August 22, 1989 and July 30, 1990.*" [Emphasis added.]

Both the 1990 judgment and the notice of appeal specifically refer to the 1989 order which called for the dismissal of these three defendants. We also note that the references are to the 1989 "order," but the date provided is for the 1989 judgment.

■ First, we must consider the application of Rule 54(b), N.D.R.Civ.P.:

"[A]ny order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all the parties."

The 1989 judgment did not become an appealable judgment, absent a Rule 54(b) certification, until the final judgment was entered in 1990. *E.g., Smith v. Vestal,* 456 N.W.2d 502, 504 (N.D.1990). From a review of the 1990 order and 1990 judgment we conclude that the district court intended to consolidate the 1989 order and judgment with the 1990 order and judgment. Since notice of entry of judgment had not been served upon Baron at the time Baron filed his notice of appeal, it is reasonable to believe that Baron believed his notice of appeal included the aforementioned orders and judgments. This is evidenced by the fact that Baron specifically stated in his notice of appeal, received by all three of these defendants, that the subject matter of his appeal stems from both the 1989 and 1990 orders.

Second, while we have not directly stated that *notices* of appeal are to be liberally construed in favor of their sufficiency, many other courts have. *E.g., Kelly v. Kelly,* 371 N.W.2d 193, 195 (Minn.1985); *Culbert v. Young,* 140 Wis.2d 821, 412 N.W.2d 551 (Wis.App.1987). We have, however, allowed appeals under similar reasoning. *See Greenwood, Greenwood & Greenwood v. Klem,* 450 N.W.2d 745 (N.D. 1990) (allowing an appeal from an order for judgment when a subsequent judgment is filed); *Production Credit Ass'n v. Davidson,* 444 N.W.2d 339 (N.D.1989) (allowing notice of appeal from a judgment to include issues which were in the order but not the judgment); *Vanderhoof v. Gravel Products, Inc.,* 404 N.W.2d 485, 488 (N.D.1987) (treating as proper an appeal from the entry of judgment or the notice of entry of judgment as from a previously entered judgment); *First Trust Company of North Dakota v. Conway,* 345 N.W.2d 838, 840 (N.D.1984) (*statutes* conferring right to appeal are to be liberally construed).

As these three defendants were served with notices of appeal, both the judgment and notice of appeal referred to the 1989 order for judgment dismissing these defendants, the notice of entry of the 1989 judgment was not served upon Baron until after the notice of appeal was filed and served and these defendants have not alleged prejudice or inconvenience as a result of the failure to be specifically named in the 1990 judgment or in the notice of appeal, we conclude that their jurisdictional contentions are without merit.

## II. TIME OF "DISCOVERY"

■ Summary judgment is a procedural device which provides a prompt expeditious method for disposing of a controversy without a trial if there are no questions as to material facts, or inferences which may be drawn from undisputed facts, or when the only question to be resolved is a question of law. *E.g., Adams v. Canterra Petroleum, Inc.,* 439 N.W.2d 540, 542 (N.D.1989). The initial burden of showing that there

are no disputes as to material facts or inferences falls upon the moving party. *E.g., Wheeler v. Schmid Laboratories, Inc.,* 451 N.W.2d 133, 136 (N.D.1990). While the moving party bears the initial burden of showing that no dispute as to material facts or inferences exist, the non-moving party has a subsequent duty to respond to the motion for summary judgment. *E.g., United Electric Service & Supply, Inc. v. Powers,* 464 N.W.2d 818 (N.D.1991); *Eckmann v. Northwestern Federal Savings & Loan Association,* 436 N.W.2d 258, 260 (N.D.1989).

On appeal, we will review the evidence in a light most favorable to the party against whom the summary judgment was granted. *Wheeler,* 451 N.W.2d at 136; *Adams,* 439 N.W.2d at 542; *Thiele v. Lindquist & Vennum,* 404 N.W.2d 52, 53–54 (N.D.1987). Baron asserts that a material question of fact exists concerning the determination of when the statute of limitations began to run.

The relevant part of the statute of limitations governing this action reads:

"4. Any action to recover damages based on injury allegedly resulting from exposure to asbestos composed of chrysotile, amosite, crocidolite, tremolite, anthrophyllite, actinolite, or any combination thereof, shall be commenced within three years after the injured person has been informed of discovery of the injury by competent medical authority and that such injury was caused by exposure to asbestos as described herein, or within three years after the discovery of facts which would reasonably lead to such discovery, whichever is earlier."

Section 28–01.1–02(4), N.D.C.C. Section 28–01.1–02(4) thus provides for the application of the "discovery" rule in cases concerning injuries stemming from asbestos exposure.

In discussing but not applying this rule in a products liability case, we have said: "The limitations period begins to run when the plaintiff discovers or reasonably should have discovered the injury." *Erickson v. Scotsman, Inc.,* 456 N.W.2d 535, 538 (N.D. 1990) (quoting 4 American Law of Products Liability 3d, Statutes of Limitation § 47:21 (1987)). *Accord* 2 A Framer & Friedman, Products Liability §§ 12.02[3], 12.04[4] (1988). We have applied the discovery rule in cases involving medical and legal malpractice. *See Wheeler,* 451 N.W.2d at 137 (applying the "discovery" rule to a medical malpractice case); *Wall v. Lewis,* 393 N.W.2d 758, 761–62 (N.D.1986) (applying the "discovery" rule to a legal malpractice case). We have also noted the potential use of the discovery rule in cases which involve asbestos. *See generally Erickson,* 456 N.W.2d at 538–39.

Baron contends that the determination of *when* he was either informed by competent medical authority of his injuries, or discovered facts which would lead to such a discovery, is a question of fact which prevents the application of summary judgment. We have applied the objective standard to the knowledge requirement of the discovery rule. *Wheeler,* 451 N.W.2d at 137; *Wall,* 393 N.W.2d at 761. In *Wall,* we said:

"Thus, the focus is upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists. It is not necessary that the plaintiff be subjectively convinced that he has been injured and that the injury was caused by the defendant's negligence."

393 N.W.2d at 761.

Ordinarily, the plaintiff's knowledge is a question of fact which prevents the application of summary judgment. *E.g., Wheeler,* 451 N.W.2d at 137. However, "the issue becomes one of law if the evidence is such that reasonable minds could draw but one conclusion." *Id.* (citing *Belgarde v. Rosenau,* 388 N.W.2d 129, 130 (N.D.1986)). In *Wall,* we said:

" 'The issue of discovery can become an issue of law where the pleadings or a motion for summary judgment establish that the plaintiff had a general awareness of misconduct by the attorney which pre-existed the statutory period.' "

393 N.W.2d at 762 (quoting R. Mallen and V. Levit, Legal Malpractice § 394 (2d ed. 1981)).

Baron initiated this action in September of 1987.[4] The defendants had the initial burden of establishing that Baron was either informed "of discovery of the injury by competent medical authority and that such injury was caused by exposure to asbestos," or that he discovered "facts which would reasonably lead to such discovery," prior to September of 1984.[5] The following facts could support a conclusion that Baron had the statutorily required knowledge of his injury, or that he had facts which should reasonably have led to the discovery of his injury, prior to September of 1984: 1) Baron began to have trouble breathing in 1970; 2) During the 1970's, Baron became aware of the potential dangers associated with asbestos; 3) In the late 1970's, Baron began to wear a protective mask on a partial basis; 4) In 1982, Baron attended a meeting concerning asbestos issues at the law office of Shelly Lashkowitz; 5) Following the meeting with Lashkowitz, x-rays of Baron's chest were sent to Dr. Selikoff at the Mt. Sinai Medical Center in New York; 6) Baron received a report from Dr. Selikoff, dated April 16, 1982, which indicated that the x-rays revealed "appearances are consistent with asbestosis"; and, 7) On July 16, 1982, Baron initiated a claim with the Worker's Compensation Bureau alleging he had contracted asbestosis in his lungs as the result of working with asbestos, and that his first treating physician was Dr. Selikoff. This evidence supports a conclusion that the defendants met the initial burden of showing that Baron was aware of facts which reasonably should have led him to the discovery of his injury no later than July 16, 1982.

As summary judgment of dismissal was granted, we must view that evidence in light of all the evidence. Baron asserts that the following facts create genuine issues of material facts, or issues of inferences to be drawn, that make summary

judgment in this case improper: 1) Baron was never personally examined by Dr. Selikoff; 2) On October 11, 1984, Dr. March stated, in his discharge report, Baron had "a history of asbestos exposure and has known pleural plaques, but no evidence of pulmonary asbestosis."; 3) On November 2, 1984, Dr. Stoy indicated that Baron had a history of "asbestos exposure with positive plaques on the diaphragms," but later in the same report said that a pulmonary function test had been performed that did not disclose a pulmonary disease which could be attributable to his "asbestos" [sic]; 4) On December 28, 1984, Baron's worker's compensation claim was denied; and 5) An affidavit of Baron says that his physicians said he did not have asbestosis. He relies especially upon *Barsness v. General Diesel & Equipment*, 383 N.W.2d 840, 844 (N.D.1986), where we said:

> "Where there exists the 'slightest doubt' as to a factual dispute or 'genuine issue of fact,' summary judgment should be denied in a negligence action. [Citation omitted.]"

In the instant case we can look directly at evidence which suggests the extent of Baron's knowledge at the time of the filing of the worker's compensation claim; *i.e.*, the claim itself. However, we should not look only at the information available to him at that time, but should also consider the information which became available to him more directly relating to his condition between the filing of the claim and the denial of the claim.

Other courts have addressed statute of limitations problems involving the prior submission of a claim for worker's compensation benefits. *See Ackler v. Raymark Industries, Inc.*, 380 Pa.Super. 183, 551 A.2d 291 (1988); *Chandler v. Johns–Manville Corp.*, 352 Pa.Super. 326, 507 A.2d 1253 (1986); *Price v. Johns–Manville Corp.*, 336 Pa.Super. 133, 485 A.2d 466

---

**4.** Under Rule 3, N.D.R.Civ.P., "[a] civil action is commenced by the service of a summons." The defendants were served the summons at various dates during September 1987. For purposes of our opinion, the exact dates are not relevant.

**5.** By subtracting the three year time limitation period from the date the action commenced in September 1987, we determine the latest date "discovery" could have occurred and still be barred by the statute of limitations was September of 1984.

(1984); *Staiano v. Johns–Manville Corp.*, 304 Pa.Super. 280, 450 A.2d 681 (1982); *Uram v. ABEX Corp.*, 266 Cal.Rptr. 695, 217 Cal.App.3d 1425 (Cal.App. 1 Dist.1990); *Allender v. AKRO Corporation*, 1985 WL 9188 (Ohio App.). The above courts affirmed the lower courts' decisions to grant summary judgment of dismissal of the claims. In each of the above cases except *Uram*, the plaintiff's worker's compensation claim had been granted. In *Uram*, although the chief of claims for the compensation program agreed that Uram had sustained pulmonary injury consistent with exposure to asbestos in the performance of duty, he concluded that there was no evidence of disability and, accordingly, the federal worker's compensation claim was denied. 217 Cal.App.3d at 1429, 1430, 266 Cal.Rptr. 695. Essentially, the worker's compensation award did not change what the claimants in the above cases knew or perceived they knew. This case differs from all of the above cases except *Uram* in that the worker's compensation claim was denied in this case and allowed in the other cases, and in that it was denied on grounds which may have caused Baron to doubt that he had asbestosis so as to discourage him from suing the defendants. Compounding Baron's possible confusion resulting from the denial of the worker's compensation claim are the opinions of Dr. Stoy and Dr. March, rendered prior to the denial of the worker's compensation claim, which also could have caused him to question whether or not he actually suffered from asbestosis.

The crucial question in the instant case, however, is whether or not Baron, prior to September of 1984, was "informed of discovery of the injury by competent medical authority and that such injury was caused by exposure to asbestos," or *discovered "facts which would reasonably lead to such discovery."* § 28–01.1–02, N.D.C.C. (emphasis added).

Baron filed a worker's compensation claim on July 16, 1982, that specifically stated that he had been injured by asbestos. This indicates only Baron's knowledge on that date.

In *Uram*, the California Court of Appeals, when confronted with similar contentions, said:

"He also stresses that his compensation claim was denied in 1982. However, the facts which led him to file that claim were not changed by the Labor Department's determination. Nor does the record reflect that after the denial of his claim Uram learned of any new facts regarding his condition that led him to bring his action in 1987. As in *Jolly*, [*Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1112, 751 P.2d 923 [245 Cal.Rptr. 658] (1988)] *it is his discovery of facts, not their legal significance to the Labor Department, that matters here.* At the very least, Uram *should* have known of his asbestos-related disability long before he filed this lawsuit."

217 Cal.App. at 1429, 1430, 266 Cal.Rptr. 695 (emphasis added).

In the instant case, as distinguished from the facts in *Uram*, Baron received, in addition to a denial of his claim, specific information from doctors who personally examined him that: "He has a history of asbestos exposure and has known pleural plaques *but no evidence of pulmonary asbestosis*"; and, *"His asbestos [sic] is most likely asymptomatic an [sic] is strictly and [sic] exposure without any clinical significance.* [Emphasis added.]" Under the facts as they evolved in conjunction with his claim we cannot say that the facts are "such that reasonable minds could draw but one conclusion" and, accordingly, summary judgment of dismissal was not proper. *Wheeler*, 451 N.W.2d at 137.

We believe our opinion is also supported by a decision of the Illinois Supreme Court which stated the following under similar factual circumstances:

"In the instant case, Nolan knew he had lung problems in 1957, and he knew he had pulmonary fibrosis in 1965. It was not until May 15, 1973, that he was told by a doctor that he had asbestosis and that his condition was caused by exposure to asbestos materials at work. The evidence is conflicting as to whether

or when Nolan would have had sufficient information to reach such a conclusion earlier. The resolution of this question is not the province of this court. It is a question of fact, and in this case, a seriously disputed one. Accordingly, summary judgment, which requires that no genuine issues of material fact exist, is not an appropriate remedy here. Therefore, for the reasons stated, the judgment of the appellate court is affirmed and this matter is remanded to the circuit court for proceedings consistent with this opinion. [Citation omitted.]"

*Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 6, 421 N.E.2d 864, 869 (1981).

It is interesting to note what the Court of Appeals for the Eighth Circuit has said about this issue under Minnesota law and who should determine this issue:

"As in silicosis cases, *see Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), there is rarely a magic moment when one exposed to asbestos can be said to have contracted asbestosis; the exposure is more in the nature of a continuing tort. It is when the disease manifests itself in a way which supplies some evidence of causal relationship to the manufactured product that the public interest in limiting the time for asserting a claim attaches and the statute of limitations will begin to run. *The time at which Karjala's impairment manifested itself was, of course, for the jury to determine.* [Emphasis added.]"

*Karjala v. Johns–Manville Products Corporation*, 523 F.2d 155, 160 (8th Cir.1975).

As summary judgment of dismissal was improper, this case must be remanded to the trial court for a determination of this issue by the jury.

Notwithstanding that we have so decided we must now determine whether or not we should consider and decide the other issues raised on appeal. We receive guidance in this task from our cases in which we have remanded the cases for new trials. In some of those cases we have said: "Because some of the remaining issues raised on appeal may arise during the new trial, we will comment on those issues in the interest of judicial economy." *Keyes v. Amundson*, 391 N.W.2d 602, 607 (N.D. 1986). *See Kaufman v. Meditec, Inc.*, 353 N.W.2d 297 (N.D.1984). Pursuing that philosophy in this case, we will now apprise the other issues raised in this case.

## III. INCONSISTENT POSITION

■ Baron asserts that because the defendants had begun preparation for a possible defense on the merits at trial, dismissal on the basis of the statute of limitations was not appropriate. He contends that it is inconsistent for the defendants to claim Baron knew about his asbestos-related problems as early as 1982, and at the same time prepare to claim Baron did not have asbestosis.

Rule 8(e) of the North Dakota Rules of Civil Procedure permits alternative pleadings. *See generally*, Wright & Miller, 5 Federal Practice and Procedure § 1283 (1990). While we have recognized the validity of inconsistent pleadings, we have also noted that inconsistent alternatives may not be pursued at the same time. *Phillips–Van Heusen Corp. v. Shark Bros. Inc.*, 289 N.W.2d 216, 221–22 (N.D. 1980). We do not believe that a pretrial motion for summary judgment on the statute of limitations should be barred merely because the moving party intends to defend on the merits of the complaint at trial.

Baron cites the following cases in support of his argument that, "It has long been established that a defendant may not take advantage of the statute of limitations as an affirmative defense if that defendant presents an inconsistent theory either before or at trial." *Christenson v. Argonaut Insurance Companies*, 380 N.W.2d 515, 519 (Minn.App.1986); *Nicholson v. Maack*, 400 N.W.2d 160, 164 (Minn.App.1987); *City of St. Paul v. Bielenberg*, 164 Minn. 72, 204 N.W. 544 (1925). In *Christenson*, the Minnesota Court of Appeals said:

"If a defendant fails to plead the statute of limitations as an affirmative defense, the defense is considered waived. *Rehberger v. Project Plumbing Co.*,

*Inc.*, 295 Minn. 577, 205 N.W.2d 126 (1973); *Albers v. Fitschen*, 274 Minn. 375, 143 N.W.2d 841 (1966). The defense may also be waived if the defendant presents an inconsistent theory at trial. *City of St. Paul v. Bielenberg*, 164 Minn. 72, 204 N.W. 544 (1925). None of these circumstances apply to the present case. Brown did affirmatively plead the statute of limitations in his amended answer. He never agreed to waive the defense nor did he assert an inconsistent defense before or at trial.

380 N.W.2d at 519. We do not believe the Minnesota Court of Appeals intended to expand the waiver of the statute of limitations to an inconsistent defense asserted before trial. This is particularly true in light of *Bielenberg*, cited by Baron and the Minnesota Court of Appeals in *Christenson*, which is clearly limited to the proposition that inconsistent defenses cannot be asserted at the same time. 204 N.W. at 545. *Accord Phillips–Van Heusen*, 289 N.W.2d 216. Upon reviewing *Nicholson*, cited by Baron, we conclude that it offers no support for his position. 400 N.W.2d at 164. Instead, *Nicholson* allowed the assertion of the statute of limitations defense in a paternity action after the party asserting the defense, who was opposed to the establishment of paternity, had previously admitted the existence of paternity. *Id.*

Notwithstanding the meaning or portent of the Minnesota cases, we decline to apply the rule Baron urges upon us, especially in light of our own past case law.

We have previously stated that "it is proper for a party to assert that there are no genuine issues of material fact for purposes of that party's motion only." *Batla v. North Dakota State University*, 370 N.W.2d 554, 557 (N.D.1985) (citing *Biby v. Union National Bank of Minot*, 162 N.W.2d 370, 373 (N.D.1968)). In *Batla*, we concluded that a party was allowed to raise issues at trial even though, in the party's motion for summary judgment, the party had claimed that no issues of material fact existed. 370 N.W.2d at 557. We do not believe the defendants should have been precluded from asserting a summary judgment motion based upon discovery of facts which would reasonably lead to discovery of an asbestos created injury merely because they are also preparing for the contingency of arguing and proving the nonexistence of the injury should their motion fail.

This assertion is therefore without merit.

As the majority of the members of this Court believe the remaining issues raised by Baron on this appeal are not likely to arise at trial on remand of this case, and believe the determination of those issues at this time would be obiter dicta, we will not address those issues in this opinion.

## IV. CONCLUSION

For the reasons stated in this opinion, we reverse and remand for jury trial.

GIERKE, LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, J., concurs in the result.