2011 ND 200

**STATE of North Dakota, Plaintiff and Appellant**

v.

**William Joseph NICKEL, Defendant and Appellee.**

Nos. 20100410–20100412.

Supreme Court of North Dakota.

Oct. 18, 2011.

Julie Ann Lawyer, Assistant Attorney General, U.S. Attorney's Office, Bismarck, N.D., for plaintiff and appellant.

Garrett David Ludwig, Mandan, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] The State appeals from three orders dismissing several controlled substance-related charges against William Joseph Nickel. We conclude the district court's finding the North Dakota Board of Pharmacy ("Board") did not substantially comply with the requirement under N.D.C.C. § 28-32-03(5) (2009) that it "take appropriate measures to make interim final rules known to every person who may be affected by them" is not clearly erroneous. The district court therefore did not err in dismissing the charges against Nickel because the emergency interim final rule upon which those charges are based was invalid at the time the alleged crimes were committed. We affirm.

I

[¶ 2] After receiving the Governor's approval of its request to engage in emergency rulemaking, the Board held a public meeting in Bismarck at 9 p.m. on February 25, 2010, to consider an emergency interim final rule adding seven substances, including synthetic THC or cannabinoids and mephedrone, to the list of prohibited substances under the Uniform Controlled Substances Act, N.D.C.C. ch. 19-03.1. These substances, commonly labeled "Spark" and "Stardust," are marketed as bath salts and incense in "head shops" throughout the state. They also could be ordered through the Internet. Notice of the hearing was published in the Bismarck Tribune newspaper. The notice did not

provide information about the specific substances addressed by the proposed emergency rule. Three members of the media appeared at the hearing either telephonically or in person, as well as other members of the public. Nickel, a co-owner of Big Willies ATP in Mandan, was present at the meeting. After minor amendments were made to the initial draft, the Board unanimously voted to adopt the emergency interim final rule.

[¶ 3] On February 26, 2010, the Board's executive director sent the Legislative Council's code revisor the emergency interim final rule, a summary of the Board's meeting, the Governor's approval letter and a "Notice of Intent to Adopt, Amend and Repeal Administrative Rules" setting a public hearing for April 24, 2010, in Minot "to address proposed adoption" of the new rule. In the accompanying letter, the executive director requested the code revisor to "[p]lease publish these rules in the North Dakota Administrative Code with the earliest possible effective date." During the following week, the executive director responded to questions from the media about the emergency interim rule and the Attorney General held a press conference to discuss the rule. Five agents from the Bureau of Criminal Investigation visited nine businesses in the state's major cities to inform them about the interim final rule, but copies of the rule were not provided to all of the businesses. The interim final rule was not published in the Administrative Code until October 2010, after it had been approved as a final rule. The final rule is found in N.D. Admin. Code ch. 61–13–01, and its effective date is listed as February 26, 2010.

[¶ 4] In May, July and August 2010, Nickel was charged in Burleigh and Morton counties with several violations of the Uniform Controlled Substances Act, N.D.C.C. ch. 19–03.1, based on the substances that were criminalized by the interim final rule. Nickel moved to dismiss the charges, arguing the interim final rule was invalid. Following an evidentiary hearing, the district court granted Nickel's motions. Relying on the reasoning of two prior unappealed district court decisions holding the interim final rule invalid, the court found the Board "did not substantially comply with the notice requirement applicable to the adoption of an emergency rule and therefore the emergency rule is invalid." The cases were consolidated for purposes of appeal.

## II

[¶ 5] The State argues the district court erred in finding the Board failed to substantially comply with the notice requirement for the adoption of an emergency interim final rule.

[¶ 6] Because the Board is an administrative agency, *see Medcenter One, Inc. v. North Dakota State Bd. of Pharmacy*, 1997 ND 54, ¶ 11, 561 N.W.2d 634, the provisions of the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, apply. Administrative agencies have the power to promulgate emergency rules. *See* N.D.C.C. § 28–32–03. Section 28–32–13, N.D.C.C., provides that a "rule is invalid unless adopted in substantial compliance with this chapter." *See Illies v. Illies*, 462 N.W.2d 878, 883 (N.D.1990); *Mullins v. North Dakota Dep't of Human Services*, 454 N.W.2d 732, 734 (N.D.1990); *Huber v. Jahner*, 460 N.W.2d 717, 719 (N.D.Ct.App. 1990). The determination whether an agency substantially complies with the requirements of N.D.C.C. ch. 28–32 is a function of judicial review rather than an exercise of agency discretion. *See Hom v. State*, 459 N.W.2d 823, 826 (N.D.1990) (this Court concluded, "The trial court's finding of substantial compliance was induced by its erroneous determination of the primary

purpose of the regulation."); *Smith v. State*, 389 N.W.2d 808, 810 (N.D.1986) (this Court concluded, "[T]he trial court's finding that the second evaluation was in substantial compliance with and fulfilled the purposes of the evaluation procedures is not clearly erroneous."); *Batla v. North Dakota State Univ.*, 370 N.W.2d 554, 559 (N.D.1985) (this Court concluded, "[T]he trial court was correct in concluding as a matter of law that the procedures followed by NDSU were proper and that no issues of fact exist" concerning substantial compliance entitling NDSU to summary judgment.); *Stensrud v. Mayville State Coll.*, 368 N.W.2d 519, 523, 525 (N.D.1985) (this Court noted, "[B]ecause a determination of substantial compliance requires factual findings, summary judgment would be improper," but this Court affirmed the trial court's dismissal on summary judgment because "as a matter of law, . . . MSC complied with its contractual obligation in terminating Stensrud."); *see also* N.D.C.C. § 28-32-47(1) ("[T]he court shall affirm the agency's rulemaking action unless it finds that . . . [t]he provisions of this chapter have not been substantially complied with in the agency's rulemaking actions."); *Black Property Owners Ass'n v. City of Berkeley*, 22 Cal.App.4th 974, 28 Cal. Rptr.2d 305, 309 (1994) ("Judicial review . . . for substantial compliance with the statutory requirements does not involve an examination of the merits . . . or of the wisdom of the municipality's determination of policy."). "[W]hether conduct is in substantial compliance . . . is a question of fact." *Smith*, 389 N.W.2d at 810. *See Hom*, 459 N.W.2d at 825; *Batla*, 370 N.W.2d at 558; *Stensrud*, 368 N.W.2d at 523. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *Pember v. Shapiro*, 2011 ND 31, ¶ 11, 794 N.W.2d 435.

■ [¶ 7] At the time of this emergency rulemaking proceeding, N.D.C.C. § 28-32-03(5) (2009)[1] provided, "The agency shall take appropriate measures to make interim final rules known to every person who may be affected by them." The issue in this case is whether the district court made a clearly erroneous finding that the Board did not substantially comply with the statutory mandate that it take appropriate measures to make the emergency interim final rule known to every person who may be affected by the rule.

[¶ 8] In support of its argument that the Board substantially complied with the notice requirement, the State presented news stories from newspapers and television stations in the state. The Bismarck Tribune reported on February 27, 2010, that the Board had "banned five 'cannabinoid' substances and two stimulants," and said cannabinoids "are substances that are

---

1. In 2011 the Legislature amended N.D.C.C. § 28-32-03(5) to read:

   "The agency shall attempt to make interim final rules known to persons who the agency can reasonably be expected to believe may have a substantial interest in them. As used in this subsection, "substantial interest" means an interest in the effect of the rules which surpasses the common interest of all citizens. An agency adopting emergency rules shall comply with the notice requirements of section 28-32-10 which relate to emergency rules and shall provide notice to the chairman of the administrative rules committee of the emergency status, declared effective date, and grounds for emergency status of the rules under subsection 2. When notice of emergency rule adoption is received, the legislative council shall publish the notice and emergency rules on its website."
   2011 N.D. Sess. Laws ch. 234, § 1. This provision is "effective for rules for which the notice of rulemaking is filed with the legislative council after July 31, 2011." 2011 N.D. Sess. Laws ch. 234, § 5.

chemically similar to THC, and 'mephedrone,' ... [is] a stimulant that can cause hallucinogenic effects." The article also stated that "Stardust contains mephedrone." KFYR–TV in Bismarck reported on February 26, 2010, the Board "banned bath salts and aromatherapy incense products." KXMB–TV in Bismarck reported on February 26, 2010, the Board made "Spark and Star Dust illegal," noting the products "are labeled as bath salts and incense." The Grand Forks Herald and The Forum in Fargo newspapers reported on February 26 and 27, 2010, respectively, that the Board had banned the purchase, sale and possession of "fake meth," which is "advertised as bath salt," and "fake marijuana," which "is promoted as incense or aromatherapy." Valley News Live TV in Fargo and Grand Forks reported on February 27, 2010, the Board banned the sale of "bath salts and aromatherapy herbs" that mimic the effects of illegal substances. None of the reports identified the seven substances banned by the emergency interim final rule.

[¶ 9] When asked during the evidentiary hearing what the Board had done to inform the public about the enactment of the emergency interim final rule, the Board's executive director testified:

"A. In this case the adoption of this rule probably received more publicity than any other rule that I've been involved with at the Board of Pharmacy. The news media was there, there were newspaper, TV and radio people at the meeting. We followed up, the Bureau of Criminal Investigation was notified and handed a copy of the rule to give to all of the people we knew who were selling this stuff prior to that. And also the attorney general hosted a news media session just shortly after the rule adoption. And, of course, we spent the next week on the telephone and sending things to news media outlets all across the state and the country."

[¶ 10] No details about the Attorney General's "news media session" were provided. No details were given about the Board's contacts with "news media outlets all across the state and the country" or the "things" sent to them. The Board's executive director admitted that the Board did not "follow up" to see if the emergency interim final rule had been published in the Administrative Code, that the Board did not "direct or guide the media in what story to print," that the Board did not contact agents of the Bureau of Criminal Investigation to give them copies of the rule or direct them about whom to contact and that the Board did not have the rule published for dissemination in any manner. Although the "Notice of Intent to Adopt, Amend and Repeal Administrative Rules" was published in official county newspapers across the state and informed persons how to obtain a copy of the "proposed rule," the notice did not inform the public that the "proposed rule" was presently in effect.

[¶ 11] The Board was required to "take appropriate measures to make interim final rules known to every person who may be affected by them." N.D.C.C. § 28–32–03(5) (2009). Appropriate measures to make emergency rules known will vary depending upon the nature of the emergency rule and the number of persons affected by its provisions. This emergency interim final rule imposed grave consequences on the general public. The rule turned any person's purchase, sale or possession of lawful products into felony level offenses overnight. The question is not whether a particular defendant knew about the emergency rule and the trier of fact could find from this record that the Board did not take sufficient measures to make

the emergency interim final rule known to the public at large.

■■■ [¶ 12] "The district court assesses the credibility of witnesses and resolves conflicts in the evidence, and reviewing courts do not reweigh the evidence, make independent findings of fact, or substitute their judgment for that of the district court." *Hoggarth v. Kropp*, 2010 ND 197, ¶ 12, 790 N.W.2d 22. Under the clearly erroneous standard of review, "we will not reverse the district court's decision simply because we may view the evidence differently." *In re A.M.W.*, 2010 ND 154, ¶ 7, 786 N.W.2d 727. We conclude the district court's finding that the Board did not substantially comply with the notice requirement under N.D.C.C. § 28–32–03(5) (2009) is not clearly erroneous.

### III

[¶ 13] The district court did not err in dismissing the charges against Nickel because the emergency interim final rule upon which those charges are based was invalid at the time the alleged crimes were committed. The orders are affirmed.

[¶ 14] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

Dale V. Sandstrom

I concur in the result.